**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:94-cr-00012-MOC**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **RANDELL BRICE HARRIS,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 172). The Government has responded in opposition to the motion.

I.  BACKGROUND

Defendant is currently serving a life sentence at USP Atlanta for convictions in violation of 21 U.S.C § 846 (Conspiracy to Possess with Intent to Distribute and Distribution a Quantity of Cocaine, Cocaine Base, and Marijuana); 18 U.S.C. § 1959 and 2 (Conspiracy to Commit Murder in Aid of Racketeering and Aid and Abet in the same);18 U.S.C. § 1959(a)(1) and (2) (Murder in Aid of Racketeering and Aid and Abet in the same); 21 U.S.C § 841(a)(1) and 18 U.S.C. § 2 (Possess with Intent to Distribute a Quantity of Marijuana and Aid and Abet the same); 18 U.S.C. § 924(c) and 2 (Use, Carry Firearm During and in Relation to a Drug Trafficking Crime and Aid and Abet in the same); 18 U.S.C. § 1959(a)(3) Assault with a Dangerous Weapon in Aid of Racketeering and Aid and Abet in the same); and 18 U.S.C. § 922(g)(1) and 924 (Felon in Possession of Firearm and Armed Career Criminal enhancement). He seeks early release from prison due to his age and history of hypertension.

According to the Presentence Investigation Report (Doc. No. 166), the facts underlying

the counts of conviction show that Defendant and his six codefendants operated an organization known as the "Brown Organization" that conspired to possess and distribute quantities of cocaine, crack cocaine, and marijuana in the Charlotte area from January 1990 until December 1993. (See Doc. No. 166 at 6). Defendant was known within the group as the "enforcer" for the group's leader. (See id.). Defendant was known to use firearms to protect group members while they conducted drug sales, enforced collection of profits from drug sales and payments of debt, and assaulted and murdered other drug dealers to rob them of their drugs. (See id.).

On October 12, 1993, Defendant arranged with his codefendant to set up a rival drug dealer in a supposed drug sale. (See id.). During the sale, Defendant met with the victim and robbed the victim of five pounds of marijuana, eventually fatally shooting the victim in the face with a 9mm caliber handgun. (See id.). In March 1993, Defendant confronted another victim, a drug dealer who owed a debt to Defendant's organization. Defendant pistol-whipped the victim on the side of the head with a revolver and demanding payment for the debt. (See id. at 7).

Defendant, along with his codefendants, was indicted on twelve counts within the Western District of North Carolina. Defendant was convicted by a jury at trial on June 2, 1994, and sentenced to total term of imprisonment of life plus fifty years.

Prior to his conviction of the instant offenses, Defendant had been convicted of four violent felonies, including Armed Robbery on three occasions and Assault with a Deadly Weapon on one occasion, making Defendant an Armed Career Criminal and Career Offender within the meaning of U.S.S.G. § 4B1.4 at the time of his conviction of the instant offenses. Defendant's criminal history spanned the course of several decades, beginning at the age of 17 and continuing until his conviction and life sentence at the age of 39. (See Doc. No. 166 at 12). Defendant has a history of violent robberies that involved the use of a firearm and threats

towards victims to obtain cash. In a conviction from 1976, at the age of 22, Defendant robbed a motel in Gastonia, North Carolina, while armed with a firearm. During the robbery, the victim, a motel employee, was tied up with an electrical cord and threatened with a gun to his head. Two shots were fired during the robbery.

According to the Presentence Investigation Report, Defendant was on three separate instances of probation and one instance of parole at the time of the instant offenses, and the offenses occurred less than two years after Defendant's release from an active term of imprisonment.

On December 15, 2020, Defendant submitted a request for compassionate release to the warden. The request was based on an underlying medical condition of high blood pressure, Defendant's age, as well as the risk presented should Defendant contract COVID-19. The warden denied this request on March 17, 2021. On May 3, 2021, Defendant submitted a motion to this Court for compassionate release. More than 30 days have passed since Defendant's request to the warden, and he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

The records reveal that Defendant, who is 66 years old, presents high blood pressure. This condition appears well-controlled with medication provided by the BOP institution. Defendant is fully ambulatory and engages in all normal activities of daily living.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at pp. 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to

serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to

recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Here, Defendant presents the risk factor of hypertension. However, he no longer presents an "extraordinary and compelling reason" because he has declined vaccination. On April 7, 2021, Defendant was offered the Pfizer COVID-19 vaccine, and he refused it. He has no known medical contraindication for the vaccine. Defendant cannot establish a particularized risk of contracting COVID-19 where he refuses to "tak[e] the reasonable precautions afforded to him by the BOP." United States v. Feiling, No. 3:19-CR-112(DJN), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020) (finding that, although the defendant suffered from several COVID-19 risk factors, he had not established extraordinary and compelling reasons for compassionate release because he refused BOP's offer to place him in medical isolation in order to preserve his housing assignment). Otherwise, it "would encourage inmates to avoid" precautions "that will help reduce the spread of COVID-19 within the prison system in hopes that a court will find them at risk and release them, defeating the ultimate goal of both the BOP and the courts in helping stem the spread of COVID-19." Id. Further, Defendant's decision to refuse the vaccine "undermines his argument" that [his facility] "has not taken sufficient steps to protect him from contracting COVID-19," given that BOP officials allocated doses of the vaccine for Defendant in order to protect him against the risk of future infection. Id.

As the government has explained, the pertinent guideline policy statement treats as an

"extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. Defendant has been offered a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. See FDA Decision Memorandum, Pfizer—Dec. 11, 2020, https://www.fda.gov/media/144416/download.

In addition, the only risk factor that Defendant presents is hypertension. The CDC has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19. The CDC previously stated that hypertension "might" present a risk, and more recently stated that it "possibly" can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely.

Accordingly, many courts, with endorsement from courts of appeals, have denied relief when hypertension is the only potential risk factor presented. In addition, courts have maintained this view following the CDC's March 29, 2021, revision of its list of risk factors, which singled out hypertension as only "possibly" presenting a risk. See, e.g., United States v. Jackson, -- F. App'x --, 2021 WL 1400937, at *3 (11th Cir. Apr. 14, 2021) (as the risk of severe disease for

one suffering from hypertension "is only potentially higher," the district court did not abuse its discretion in denying relief). For all of these reasons, compassionate release is not warranted here.

Even if the Court determined that Defendant had demonstrated an extraordinary and compelling reason for compassionate release, it would deny Defendant's motion because the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13-CR-133 (DJN), 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)-(2)). Section 3553(a) also instructs courts to "consider the kinds of sentences available and the sentencing range established for the offense." United States v. Nabaya, No. 3:17-CR-3, 2021 WL 54361, at *4 (E.D. Va. Jan. 6, 2021) (quoting 18 U.S.C. § 3553(a)(4)). Further, the Sentencing Commission policy statement, U.S.S.G. § 1B1.13, instructs courts to consider the factors set forth in 18 U.S.C. § 3142(g), including "the nature and circumstances of the offense charged …; the history and characteristics of the person …; [and] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id. (quoting 18 U.S.C. § 3142(g)). Additionally, "the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated," by itself, is "insufficient to warrant a sentence reduction." Prater, 2021 WL 54364, at *4 (citing U.S.S.G. § 1B1.13, application note 3). In this case, the relevant statutory sentencing factors do not support

compassionate release.

The seriousness of Defendant's offense weighs heavily against release. Courts in this district consistently have denied compassionate release based on the seriousness of the defendant's offense. United States v. Reid, No. 2:02-CR-172-7, 2020 WL 7318266, at *3 (E.D. Va. Dec. 10, 2020) (finding that the statutory sentencing factors weighed against release where the defendant had "served as a 'manager' in a vast drug- trafficking conspiracy" and "continued his wrongful conduct even after his arrest by directing a co-conspirator to collect drug proceeds"); see also, e.g., Prater, 2021 WL 54364, at *6 (finding that a defendant convicted of drug and firearm-related offenses had "proved his willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity"); Albury v. United States, No. 2:19-CR-68, 2020 WL 6779643, at *5 (E.D. Va. Oct. 23, 2020) (finding that the statutory sentencing factors weighed against release where the defendant "was convicted of a large-scale drug trafficking crime that he conducted over the course of five years," "possessed firearms," and "often travelled interstate to purchase and sell drugs"). Defendant has committed violent robberies throughout adulthood, culminating in a murder. There is no doubt that at the time of his offense, Defendant was engaged in violent prohibited conduct that presented a significant danger to the community. In addition, Defendant has a lengthy record of criminal conduct, including the commission of violent crimes while on parole or supervised release. Defendant therefore continues to present a significant danger to the community and will be required to serve the sentence that this Court imposed for his criminal conduct.

Defendant fails to demonstrate how release, 27 years into a life sentence for a serious murder in aid of racketeering, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). A

consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, Defendant's managed medical condition, and the amount of time remaining on Defendant's sentence.

Defendant's criminal history underscores that the statutory sentencing factors do not support his request for release. Defendant presents a "serious" risk of recidivism given that he committed this offense after having served sentences of imprisonment for crimes of violence. Prater, 2021 WL 54364, at *6; see also, e.g., Bryant, 2020 WL 7497805, at *6 (reasoning that the defendant "present[ed] a recidivism risk, as evidenced by the fact that he violated the conditions of his pretrial release and consistently failed to comply with drug testing requirements").

Compassionate release is not appropriate because Defendant presents a danger to the safety of others and the community. See 18 U.S.C. § 3142(g). Defendant "presents a serious threat to the public" because he qualifies as a career offender based on prior convictions for armed robbery. United States v. Harris, No. 3:11-CR-156, 2020 WL 7646633, at *5 (E.D. Va. Dec. 23, 2020). Further, Defendant "has more than one offense involving firearms, which raises concerns about public safety should he be released." Harris, 2020 WL 7646633, at *5. The "need for continued deterrence of such misconduct weighs against" the defendant's request for compassionate release. Nabaya, 2021 WL 54361, at *6.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Appointment of Counsel and Compassionate Release/Reduction of Sentence, (Doc. No. 172), is **DENIED**.

Signed: July 14, 2021

Max O. Cogburn Jr
United States District Judge