UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:94-cr-12-MOC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| RANDELL BRICE HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 193). The Government has responded in opposition to the motion. (Doc. No. 196).

I.      **BACKGROUND**

Between 1990 and 1993, Defendant and his six codefendants operated an organization known as the "Brown Organization," which conspired to possess and distribute cocaine, crack cocaine, and marijuana in the Charlotte, North Carolina, area. (Doc. 166 ¶ 5). Defendant was the "enforcer" for Willie James Brown, Jr., the group's leader. (Id.). As Brown's enforcer, Defendant used firearms to protect group members while they conducted drug sales, enforced collection of profits from drug sales and payments of debt, and assaulted and murdered other drug dealers to rob them of their drugs. (Id.).

In March 1993, Brown and Defendant confronted Robert Fullager, who owed a debt to the Brown organization. (Doc. 166 ¶ 9). When Fullager asked if he could "just work it off," Defendant pistol-whipped Fullager on the side of the head with a revolver and demanded payment for the debt. (Id.). In October 1993, Brown arranged to buy five pounds of marijuana from William Gardner. (Doc. 166 ¶ 7). Defendant suggested that he rob Gardner instead, and

-1-

Brown arranged for Gardner to pick Defendant up, explaining that Defendant would direct Gardner to the transaction site. (Id.). After Gardner picked Defendant up, Defendant robbed Gardner of the marijuana. (Id.). When Gardner resisted, Defendant shot Gardner in the face with a 9mm caliber handgun, killing him.[1] (Id.).

Defendant had previously been convicted of five counts of armed robbery, assault with a deadly weapon, and both misdemeanor and felony escape. (Doc. 166 ¶¶ 60–64, 70). During one of the armed robberies, Defendant robbed a hotel, tying an employee up with an electrical cord and threatening him with a gun to his head. (Doc. 166 ¶ 64). Defendant also fired two shots during the robbery. (Id.). Defendant consistently committed criminal offenses when not in prison between the ages of 17 and 39 years old, when he was convicted in this case. (Doc. 166 ¶¶ 58–74). Additionally, while he was involved in the Brown Organization, he was also on probation during three periods of time and under parole supervision during a fourth period of time. (Doc. 166 ¶ 75).

A federal grand jury indicted Defendant and charged him with conspiracy to possess with intent to distribute powder and crack cocaine and marijuana, 21 U.S.C. § 846; conspiracy to commit violent acts in aid of racketeering, 18 U.S.C. § 1959; murder in aid of racketeering, 18 U.S.C. § 1959(a)(1); possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); two counts of possessing a firearm during a drug-trafficking offense, 18 U.S.C. § 924(c); two counts of possessing a firearm during a crime of violence, 18 U.S.C. § 924(c); assault with a dangerous

_____

[1] The Government notes in its opposition brief that the offense conduct section of the presentence report mistakenly reports that Brown shot Gardner but in the next paragraph notes that Defendant met with Brown after his meeting with Gardner and reported to Brown that Defendant had had to "pop" Gardner and that Defendant was unsure whether he had killed Gardner. (Doc. 166 ¶ 7).

weapon in aid of racketeering, 18 U.S.C. § 1959(a)(3); and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). (Doc. 166 ¶ 1). A jury convicted Defendant on all counts. (Id. ¶ 3).

This Court's probation office submitted a presentence report and calculated a total offense level of 45, automatically reduced to a level 43 for all offenses, except the Section 924(c) firearm offenses, which carried mandatory consecutive sentences. (Id. ¶¶ 51, 53). Combined with a criminal history category of VI, this offense level called for a sentence of life in prison. (Id. ¶ 108). This Court was required to sentence Defendant to consecutive terms of 60 months in prison for two of his Section 924(c) offenses and to consecutive terms of 240 months in prison for the other two Section 924(c) offenses, for an aggregate consecutive sentence of 600 months in prison. (Id.). This Court imposed a sentence of life plus 600 months in prison. (Doc. 87 at 2).

Defendant has incurred seven disciplinary citations between 1996 and November 2012. (Doc. 193 at 31). Defendant has completed at least 46 educational or work programs, including a drug-education program. (Id. at 27–30).

Defendant submitted a request for compassionate release based on his high blood pressure in December 2020. Defendant filed his first motion for compassionate release in May 2021, which this Court denied in July 2021. (Docs. 169, 175). Defendant filed his second motion for compassionate release in October 2021, without renewing his request for compassionate release with the warden of his Bureau of Prisons institution. (Docs. 179; Doc. 181 at 4). This Court denied without prejudice Defendant's second motion for compassionate release in December 2021. (Doc. 182). Defendant filed his third motion for compassionate release in January 2022, again failing to submit a new request for compassionate release to his warden. (Doc. 183; Doc. 187 at 7). This Court denied without prejudice Defendant's third motion in March 2022. (Doc. 188). Two and a half weeks later, Defendant filed his fourth motion for

compassionate release, and this Court denied that motion without prejudice in May 2022 based on the Defendant's failure to exhaust his administrative remedies. (Doc. 192).

In June 2022, Defendant submitted a request for compassionate release to his warden based on his hypertension and the risk it posed if he contracts COVID-19, the change in law related to stacked sentences for Section 924(c) offenses, and his involvement in "programs." (Doc. 193 at 25). In September 2022, Defendant filed his fifth motion for compassionate release in this Court, seeking a reduction in his sentence because of the threat of COVID-19 in the light of his hypertension; the lower sentence he would receive today for his Section 924(c) offenses; the change in marijuana laws that would benefit him today; and his low risk of recidivism, his efforts at rehabilitation while in prison, his family support, and his post-imprisonment employment opportunities. (Doc. 193 at 6, 10–12, 15–17).

## II.    DISCUSSION

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended Section 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the Bureau of Prisons filed a motion seeking that relief.

The First Step Act also amended 18 U.S.C. § 924(c), removing the possibility that a defendant will receive "stacked" Section 924(c) sentences by requiring that the 25-year mandatory-minimum sentence that applies for a second or successive Section 924(c) conviction

-4-

applies only "when a prior § 924(c) conviction arises from a separate case" and already "has become final." First Step Act § 403(a), 132 Stat. at 5222. That change does not apply retroactively to sentences, like Defendant's, that were imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b).

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

Defendant has not alleged that he satisfies any of the criteria for compassionate release authorized in Section 1B1.13. Instead, he asks this Court to exercise its discretion to grant him compassionate release because he is serving stacked 25-year sentences for Section 924(c) convictions arising out of robberies and drug-trafficking offenses. In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in Section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the

extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the Bureau of Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id.

Were section 403 of the First Step Act in effect when Defendant was sentenced, he would have received a sentence of no more than five years in prison for each of his Section 924(c) sentences. See 18 U.S.C. § 924(c)(1)(A)(i). This would reduce his consecutive sentence from 50 years to 20 years, but Defendant would still be subject to life in prison for his drug-trafficking-conspiracy and felon-in-possession offenses. Defendant's offense conduct resulted in Gardner's murder and was otherwise violent and extensive, and Defendant's prior criminal history consists of numerous violent offenses and an extraordinary criminal record, garnering 30 criminal history points. Defendant was also not a young man when he committed his offenses. For these reasons, the reduction in Defendant's consecutive sentence that he would receive if sentenced today is not an extraordinary and compelling reason to grant Defendant compassionate release. Defendant also suggests that the change in marijuana laws would result in a lower sentence if he were sentenced today, but he was held responsible primarily for crack cocaine, not marijuana. See (Doc. 166 ¶ 5). And Defendant has not explained how the change in marijuana laws would benefit him.

Defendant's hypertension also does not present an extraordinary and compelling reason to grant him compassionate release. Hypertension may increase an inmate's risk of suffering more severe consequences from a COVID-19 infection, but it is not certain to do so. Moreover,

with the availability of vaccines that lower the risk of serious consequences, an inmate's hypertension is not sufficiently extraordinary and compelling to warrant compassionate release.

The sentencing factors described in 18 U.S.C. § 3553(a) also weigh against compassionate release for Defendant. The nature and circumstances of Defendant's offense were extraordinarily violent and resulted in Gardner's death, along with physical harm to another victim. While Defendant's history and characteristics includes rehabilitative work in prison, Defendant's has a history of almost unbroken criminal activity before prison and seven disciplinary infractions while in BOP. While Defendant's age (68) would ordinarily suggest a low risk of recidivism, Defendant's criminal history suggests his risk may be higher than many inmates his age. Defendant also asserts that he enjoys family support and job opportunities for when he is released from prison, but he has not presented evidence of that support or those opportunities.

Here, the Court concludes that because of the nature and circumstances of Defendant's offenses, his violent criminal history, the need to protect the public, and the need for deterrence, the Section 3553(a) sentencing factors weigh against a reduction in his sentence.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 193), is **DENIED**.

Signed: December 13, 2022

Max O. Cogburn Jr.
United States District Judge

-7-